## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

           v.          :     **Criminal No. 23-16**

BHASKAR SAVANI, a/k/a "Dr. B,"   :
et al.

## O R D E R

AND NOW, this _____ day of June, 2023, upon consideration of Defendants

Bhaskar, Arun and Niranjan Savanis' Motion for Temporary Modification of Pre-Trial

Release Conditions to Allow Periodic Travel to New York, New Jersey, and the Middle

and Western Districts of Pennsylvania for a Charitable Purpose, ECF No. 214, and the

Government's response in opposition thereto, it is **HEREBY ORDERED** that the motion

is **DENIED**.


_____
**HONORABLE JEFFREY L. SCHMEHL**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA     :

              v.               :         **Criminal No. 23-16**

BHASKAR SAVANI, a/k/a "Dr. B,"    :
et al.

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANTS BHASKAR SAVANI, ARUN SAVANI,
AND NIRANJAN SAVANI'S EMERGENCY MOTION FOR
TEMPORARY MODIFICATION OF PRE-TRIAL RELEASE CONDITIONS**

Lead defendants Bhaskar, Arun and Niranjan Savani (the "defendants") filed an

"emergency" motion for temporary modification of pre-trial release conditions

purportedly to allow "periodic travel to New York, New Jersey, and the Middle and

Western Districts of Pennsylvania for charitable purpose[s]" ("Emergency Motion").

ECF No. 214. The government strongly objects to this frivolous request. The defendants

remain an extreme risk of flight, and the strictest combination of conditions are needed to

address that risk. They are multi-millionaires with easy access to money and private

planes, and they have substantial real-estate holdings outside of the United States. After

an extensive investigation, a grand jury found probable cause to charge these defendants

with serious offenses for which they are facing lengthy prison terms if convicted. In light

of their obvious incentives and wherewithal to flee, the defendants agreed to the current

conditions of release, in lieu of pre-trial detention, to ensure their appearance at trial.

There is simply no good reason to modify the agreed to conditions of release for the

defendants stated purpose of personally retrieving fruit at airports across multiple states.

2

Moreover, the defendants' extreme risk of flight is apparent, including because (1) the defendants likely discussed a plan to flee from the United States to India if ever charged in this case[1]; (2) the nature and circumstances of the offenses are very serious in this RICO case where the defendants are exposed to approximately two-to-three decades of imprisonment under the U.S. Sentencing Guidelines; (3) the weight of the evidence is overwhelming; (4) the history and characteristics of the defendants demonstrate a propensity for deceit, including with government entities; (5) the defendants have significant financial resources both in the United States and abroad; (6) the defendants have significant ties to India and can easily re-settle there; (7) the defendants have directed individuals to lie to the government in the past; (8) the indictment alleges the defendants' efforts to produce false affidavits to submit to the government; and (9) allowing additional freedom of movement could expose witnesses to the defendants under the guise of mango deliveries. *See* 18 U.S.C. § 3142(g).

Their motion is patently absurd. These defendants employ hundreds of people through a myriad network of businesses, including Savani Farms LLC, a Pennsylvania

---

[1] As discussed below, a confidential source told law enforcement that she or he learned the defendants, before indictment, discussed a plan to flee to India if they are ever indicted in this case. Fortunately, the strict combination of conditions post-indictment have so far prevented the defendants flight and mitigated some of their dangerousness. But given the strength of the government's case, nature and circumstances of the offenses including significant imprisonment exposure if convicted, strong ties to India, significant financial resources in the United States and abroad, and past willingness to lie to the government when it served their purposes, the government believes the defendants are likely to flee before trial unless they remain on the strictest of conditions.

for-profit corporation. This so-called charity operates with some of the same suspicious activity seen in the defendants' racketeering businesses. Recent bank records, described below, call into question representations made by the defendants regarding the mango business.  The Court should not take at face value the defendants' proffered reasons for seeking a modification, particularly in light of the defendants' mendacious past. As alleged, the defendants are charged in a 42-count RICO indictment involving a more than a decade-long racketeering enterprise consisting of heath care fraud, visa fraud, tax fraud and money laundering crimes. To further those crimes, the defendants repeatedly lied to and defrauded the government to benefit themselves.

To provide just one example described in the indictment, the defendants are charged in a visa fraud scheme. At the center of that scheme was an entirely fake company, EZ Biotek LLC, which the defendants used to obtain fraudulent H-1B visas for foreign workers who often entered the United States to work for the defendants' various businesses. The defendants repeatedly lied to the government about the work the visa recipients would be doing, claiming that they would be pharmaceutical researchers and chemists, when in reality they were employed in clerical, handyman, or other positions. The defendants repeatedly lied about the visa recipients' wages, and exploited many of those same visa recipients by requiring them to kick back portions of their salaries. In an egregious portion of the scheme, the defendants sought to reduce the chance of getting caught in government onsite inspections by creating a physical EZ Biotek "laboratory" at their corporate headquarters and outfitting it with outdated lab equipment. They created EZ Biotek email addresses, directed EZ Biotek "employees" to visit the fake office at

4

corporate headquarters on weekends, and created phony EZ-Biotek paperwork. During the grand jury investigation in this case, the defendants went so far as to create false affidavits to file with federal authorities. As "character" and "past conduct" are two of the factors for the Court to consider, 18 U.S.C. § 3142(g)(3), those factors suggest the Court should not rely on the defendants' representations.

The government is not overblown in its position. These defendants have every reason to flee and every means to accomplish it.[2] They have also demonstrated a propensity for deceit. And they represent a serious risk of obstruction, including by intimidating trial witnesses. Their motion should be denied.

## I.   <u>The Law</u>

Motions related to bail pending trial are governed by the Bail Reform Act, 18 U.S.C. § 3141 *et seq*. But neither the Federal Rules of Criminal Procedure nor the Bail Reform Act specifically address the procedures or substantive law which govern a request to modify conditions of pretrial release. Section 3142(c)(3) states that a "judicial officer may at any time may amend the [release] order to impose additional or different conditions of release," but provides no guidance for how a court should go about doing so, either procedurally or substantively. Section 3145(a)(2), when addressing review or appeal of a magistrate judge's order of release, allows the defendant to "file, with the

---

[2]   *See United States v. Rudolph*, 582 F. Supp. 3d 804, 816 (D. Colo. 2022) ("[W]ealthy defendants facing serious charges have been able to use their substantial financial resources to leave the country from which they face charges" like that of the case of Ex-Nissan boss Carolos Ghosn, and those with wealth can "purchase foreign citizenship and a passport").

court having original jurisdiction over the offense, a motion for amendment of the conditions of release," but again is silent regarding any procedural or substantive standards for considering such a motion, other than stating that such a motion "shall be determined promptly." Finally, Section 3142(f) allows a detention hearing to be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

Accordingly, the defendants' request to modify conditions of pretrial release essentially asks this court to reconsider and reweigh all the factors the magistrate judges in this case considered when they imposed conditions of pretrial release for the defendants.

Under Section 3142(c), when a court determines that the release is appropriate with conditions, the court shall order the pretrial release of the person subject to the least restrictive further condition, or combination of conditions, that the court determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include any number of conditions, including:

- "Abid[ing] by specified restrictions on personal associations, place of abode, or travel;"

- "avoid[ing] all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;"

- "comply[ing] with a specified curfew;" and

- "satisfy[ing] any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community."

18 U.S.C. § 3142(c)(1)(B).

Moreover, Section 3142(f) describes that when evaluating whether a defendant is eligible for pretrial detention, the Court may do so when there is a "serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

Section 3142(g) sets out four factors a court should consider in determining whether the government has carried its burden: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).

Relevant here is that the defendants must make a threshold showing of new, material information. *See United States v. Hare*, 873 F.2d 769, 799 (5th Cir. 1989) (district court did not abuse its discretion in finding that defendant's work as an electrician and selection as a trustee while in detention was not sufficiently material to the

issue of dangerousness to justify a second hearing); *see also United States v. Gay*, No. 420CR40026JESJEH, 2020 WL 5983880, at *3 (C.D. Ill. Oct. 7, 2020), quoting *United States v. Kube*, 2020 WL 1984178 (E.D. Cal. Apr. 27, 2020) ("[T]he fact that [d]efendant has complied with his conditions of release is what allows him to remain out of custody and is not new information that has a material bearing on his conditions to reopen the detention hearing). Otherwise, a defendant could file endless petitions to modify his conditions.

In this case, the government has met its burden of proving by a preponderance of the evidence that the defendants pose a risk of flight. Given that risk, the Court should not revisit the Court's previous orders governing the defendants' pretrial release based on an immaterial change in circumstances: that the defendants want to pick up mangoes from international airports and deliver them to unknown persons and locations throughout Pennsylvania, New York and New Jersey. The Court should deny the defendants' motion.

## II.    **The Defendants Pose an Extreme Risk of Flight**

The defendants have the financial means, international ties, and stated intent to flee the country to evade prosecution. The defendants have interests in or own dental labs in London, China, and India; software operations in India, a mango farm in India, and other international real estate businesses and interests.[3] Indeed, prior to indictment, the

---

[3] These real estate interests include the development and construction of a skyscraper in Ahmedabad, India. *See* Ex. "A" (graphic from https://in.pinterest.com/savaniinfraconllp/savani-infrastructure/ accessed May 30, 2023).

defendants traveled internationally frequently, including travel to India several times each year.

Perhaps most salient to their stringent conditions of release, prior to indictment, the government received information that the defendants were working to move their business operations overseas and flee if indicted. And although the government has seized one of the defendants' private planes, the defendants have access to additional private planes that are part of Fly Main Line LLC—a flight school, executive charter service, and private plane maintenance company operated out of Brandywine Airport in West Chester, Pennsylvania and Northeast Philadelphia Airport.[4] Two planes are registered to companies organized by defendant Bhaskar Savani's daughter, Shaily Savani, with a corporate addresses of 401 Commerce Drive, Fort Washington, PA – Savani Group corporate headquarters.[5]

In light of the serious nature of the crimes charged, the significant prison time the defendants face if convicted, and their appreciable wealth and international ties, the brothers pose a significant risk of flight. Accordingly, at the time of their arrest on

---

[4] Fly Main Line LLC is a Pennsylvania company organized in 2020 by Bhaskar Savani's daughter, Shaily Savani, with a business address of 401 Commerce Drive, Fort Washington, PA. The managing member and majority owner of Fly Main Line LLC is Arun Savani's son, Avin Savani. Brandywine Aviation & Maintenance is a fictitious name registered to Fly Main Line LLC and provides airport maintenance operations, and Brandywine Aviation Training Center LLC is the division of Fly Main Line LLC that provides flight training. In 2022, defendant Arun Savani and Shaily Savani loaned approximately $158,000 to Brandywine Aviation Training Center LLC (Avin Savani and his two partners) in connection with the use of a Sling aircraft.

[5] The companies are N641PF LLC and N642PF LLC.

January 20, 2023, the government advised counsel for each of the three defendants that the government was seeking GPS tracking with location monitoring and home detention to reasonably assure their appearance or, in the alternative, pre-trial detention. All three brothers stipulated to conditions of release as proposed by the government. Nevertheless, in February 2023, just one month after their arrest, the defendants requested modifications to include being on a 10:00 p.m. to 7:00 a.m. curfew, rather than house arrest. The government reluctantly did not object to this modification to permit the defendants to physically visit the office and operate any (purportedly legitimate) ongoing businesses.

The defendants now again seek to modify their conditions of release. This time the defendants request permission to personally make "periodic trips" to retrieve international mango shipments on behalf of Savani Farms LLC from Newark International Airport and La Guardia International Airport, and to hand deliver these shipments to unidentified persons and destinations throughout Pennsylvania, New York, and New Jersey. The brothers ambiguously claim that this periodic travel may require an extension of the currently imposed curfew or even overnight stays outside of the district.

Despite having a vast network of employees, associates, family, and friends, as well as wealth and access to shipping resources, the Savani brothers claim that they must personally retrieve and deliver the mango shipments for the altruistic purpose of returning all profits from this venture "back to rural India for charitable purposes." ECF No. 214,

¶3.  The defendants further attest that their motion is exigent because of the perishable nature of the mangoes that will be arriving imminently from India.[6] *See id.* at ¶ 8.

Setting aside the facial absurdity of the defendants' motion, including the fact that the three brothers are somehow the only individuals who can transport the mangoes, the motion should be denied because the defendants are already subject to the least restrictive conditions of release that will reasonably assure their appearance in Court as required. There are no material changes in circumstances, and the risk of flight has not abated, since their arrest in January 2023 and the imposition of their conditions of release. That the defendants have thus far complied with the most basic terms of release does nothing to change the analysis. At best, this is a thinly veiled attempt to chip away at their conditions of pre-trial release. At worst, this is an attempt to make good on their statements that they would flee the country and evade prosecution.

### III.   <u>Savani Farms Has Suspicious Activity</u>

In their motion, the defendants state that Savani Farms LLC is "a mango farm, with packing facilities, in India . . ." that they established with their parents. ECF No. 214, ¶ 2. In addition to the farm in India, Savani Farms LLC was incorporated in Pennsylvania in 2011 as a for-profit company with defendant Bhaskar Savani as the organizer. *See* Ex. "B" (incorporation documents). Savani Farms LLC has had bank

---

[6] The defendants have been importing mangoes into the United States since at least 2011, when Savani Farms LLC was incorporated. They are well-aware of when mango season begins and when to expect mango shipments to arrive. They have been under indictment and under pretrial release conditions since January 2023, and thus have had over four months to make arrangements to retrieve and deliver these mangoes in a manner that did not involve modifying their conditions of release at the eleventh hour.

accounts at Conestoga Bank, Beneficial Bank, TD Bank, Fulton Bank and Key Bank, and possibly other banks. According to the Commonwealth of Pennsylvania, Savani Farms LLC has never filed wage reports for any employees for the duration of its existence, which is highly unusual for a company that does significant business.

Key Bank records for Savani Farms LLC for January 2022 through September 2022 provide a snapshot of the company's recent operation, and raise more questions than answers regarding the veracity of the claims made by the defendants in their Emergency Motion. A snapshot of some relevant transactions in the bank account is provided below:

**DEPOSITS**

| Time Frame | Aggregate Deposit Amount to Savani Farms LLC Account[7] | Additional Information |
|---|---|---|
| 8/15/2022 | $13,980 | Internal transfer from Key Bank Account of **American Dental Management Group LLC** |
| 4/26/2022 | $100,000 | Check from **Bhaskar and Daksha Savani's account** at TD Bank |
| 5/19/2022 to 9/12/2022 | $138,988.20 | Direct deposits from Aumpi LLC in Fremont, CA; twenty-one of twenty- |

---

[7]  Among other income, the account also shows an aggregate of $238,908 in cash deposits between April and September; $454,502 in miscellaneous small check deposits (many referencing mangoes on the checks) between May and July; and, $7,000 in miscellaneous small money orders on May 23 and 24. The account also shows $84,988 in income from Fresh Direct LLC in June and July.

| | | three deposits are in round dollar amounts.[8] |
|---|---|---|
| 6/17/2022 to 9/19/2022 | $100,000 | Wire and EFT credits from Poojaben LLC – all in round dollar amounts.[9] |
| 8/15/2022 | $7,450 | Internal transfer from Key Bank account of **American Management Group LLC** |

## WITHDRAWALS

| Time Frame | Aggregate Withdrawal Amount from Savani Farms LLC Account | Additional Information |
|---|---|---|
| 3/21/2022 to 6/21/2022 | $5,332 | Direct withdrawal to **"Savani Farms LLC cons pay"** and **"Savani Farms LLC Payroll"** |
| 4/29/2022 to 7/21/2022 | $1,174,000 | International wires to **"Lion foods Priva"** |
| 5/6/2022 to 8/30/2022 | $189,710 | International wires to **"Rainbow International"** |
| 5/9/2022 to 6/21/2022 | $973 | Direct withdrawals "Ajit" and "Ajitbhai." |
| 5/9/2022 to 6/21/2011 | $1,745 | Direct withdrawals  "Jorge" |
| 5/13/2022 to 6/6/2022 | $1,023 | Direct withdrawals to "Samir" |
| 8/17/2022 to 9/23/2022 | $102,000 | Direct withdrawals to **"Savani Farms LLC corp pay"** and **"Savani Farms LLC cons pay"** |

---

[8] Aumpi LLC is a Delaware Limited Liability company incorporated in May 2018. Aumpi advertises "Premium Indian Mangos." It lists its address as 3909 Stevenson Blvd, #E, Fremont, California. A Google Maps photo of that address is attached as Exhibit "C."

[9] *See* Exhibit "C." Poojaben LLC is a Texas corporation, with a business address of 1789 Johnson, Alice, Texas. A Google Maps photo of that address is attached in Exhibit "D." Based upon the photo, the property appears to be an abandoned motel.

During the mango season (approximately May through July), over $1 million, in round dollar amounts, was wired internationally to what the government believes to be Lion Foods Private Limited in India. According to LinkedIn, "Lion Foods Pvt. Ltd. is a renowned company based in India, specializing in the growing, processing, and exporting of tropical fruits, with a strong focus on mangoes. With over 20 years of experience in the mango processing industry, Lion Foods has established itself as a leading player in the market."[10] The listing further provides "Lion Foods work closely with more than 1200 farmers, supporting them in adopting good agricultural practices for sustainable and responsible farming. The company is also involved in various community initiatives, including providing education, health, and livelihood support to the farming communities they work with." *Id.* An additional $189,710 was paid to Rainbow International[11] via international wire. Interestingly, the Key Bank statements reflect no international wire payments to "a mango farm, with packing facilities, in India named 'Savani Farms' . . . ." ECF No. 214, ¶ 2.

Remaining smaller amounts of money flowed out of the account in payments to Federal Express ($10,272.25) and for other cargo expenses ($6,866.80). Additionally,

---

[10] https://in.linkedin.com/company/lionfoods, accessed May 26, 2023.

[11] According to the website https://www.indiamart.com/rainbowinternational-pune/profile.html, accessed 5/26/2023, "Established in the year 2004, at Pune (Maharashtra, India), we, "Rainbow International," are counted amongst the leading trader, importer, exporter and supplier of a high grade range of Fresh Fruits, Processed Fruits and Fertilizer." Kesar, Alphonso, and Benganpalli mangos are among the fruits that they export.

despite not reporting any wages to the Commonwealth of Pennsylvania, there are outgoing direct withdrawals of more than $100,000 for "Savani Farms LLC corp pay," "Savani Farms LLC cons pay," and "Savani Farms LLC payroll." Nothing on the face of these recent bank records evidences funds moving back to India for charitable purposes. Finally, while the government does not dispute that shipping costs have risen since the pandemic, it is unclear what excessive shipping costs the defendants are trying to avoid. Based upon the recent bank records, the bulk of Savani Farms' costs are for getting the mangoes from India to the United States. Local shipping and transportation costs appear de minimis in comparison.[12]

Regardless of this very suspicious operation by defendants already charged in a RICO indictment, the government is not attempting to thwart the shipment of mangoes or any valid charitable component of this business. Rather, based upon the frequency and ease with which the defendants have lied to the government in the past, and recent bank records that belie information the defendants have provided to their attorneys, the government questions whether altruism is the true basis for the request. It is the government's position that the delivery of the mangoes can and should be achieved by someone—anyone—other than the defendants themselves.

---

[12] Moreover, with regard to any costs associated with the delivery of the mangoes from Savani Farms LLC to its customers, one would expect that the customer would bare the shipping costs, not Savani Farms. This makes the request to hand deliver the mangoes across three states as a cost-saving measure perplexing (especially considering the current cost of gas and potential overnight accommodation costs).

**IV.**   <u>**Conclusion**</u>

For the reasons described above, the government respectfully submits that the defendants' Emergency Motion should be denied. Should the Court be inclined to grant the motion, the government respectfully requests a hearing on the motion so that the defendants are required to place their proffered representations on the record before the Court, and also submit the names and addresses of customers they will be delivering mangoes to on each trip, and the name of the organization(s) and amount of all charitable contributions made from the proceeds of their mango sales.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s Lesley S. Bonney*
LESLEY S. BONNEY
KEVIN L. JAYNE
MEAGHAN A. FLANNERY
Assistant United States Attorneys

# Exhibit "A"



# Exhibit "B"

| Entity #: 4025628 |
| Date Filed: 04/18/2011 |
| Carol Aichele |
| Acting Secretary of the Commonwealth |

**PENNSYLVANIA DEPARTMENT OF STATE**
**CORPORATION BUREAU**

Certificate of Organization
Domestic Limited Liability Company
(15 Pa.C.S. § 8913)

| Name |
| --- |
| SAVANI FARMS, LLC. |

Document will be returned to the name and address you enter to the left. ⇐

| Address |
| --- |
| 401 COMMERCE DRIVE, SUITE 108 |

| City | State | Zip Code |
| --- | --- | --- |
| FORT WASHINGTON | PA | 19034 |

Fee: $125

Commonwealth of Pennsylvania
CERTIFICATE OF ORGANIZATION 3 Page(s)

T1111240016

In compliance with the requirements of 15 Pa.C.S. § 8913 (relating to certificate of organization), the undersigned desiring to organize a limited liability company, hereby certifies that:

1. The name of the limited liability company *(designator is required, i.e., "company", "limited" or "limited liability company" or abbreviation)*:
SAVANI FARMS, LLC.

2. The (a) address of the limited liability company's initial registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is:

| (a) Number and Street | City | State | Zip | County |
| --- | --- | --- | --- | --- |
| 401 COMMERCE DR, FORT WASHINGTON | | PA | 19034 | MONTGOMERY |

(b) Name of Commercial Registered Office Provider                                County
c/o:

3. The name and address, including street and number, if any, of each organizer is *(all organizers must sign on page 2)*:

| Name | Address |
| --- | --- |
| BHASKAR SAVANI | 401 COMMERCE DR, SUITE 108 FORT WASHINGTON, PA 19034 |

PA DEPT. OF STATE
APR 1 8 2011

20

# Exhibit "C"



**3909 Stevenson Boulevard, Fremont, CA**

**Business Address of Aumpi LLC**

# Exhibit "D"

## Company Information

| | |
|---|---|
| Company Name: | POOJABEN, LLC |
| Entity Type: | TEXAS DOMESTIC LIMITED-LIABILITY COMPANY (LLC) |
| File Number: | 0802230453 |
| Filing State: | Texas (TX) |
| Filing Status: | In Existence |
| Filing Date: | June 3, 2015 |
| Company Age: | 7 Years, 11 Months |
| Registered Agent: |  Ajit Bhakta 1789 Johnson Alice, TX 78332 |
| Principal Address: | 1789 Johnson Alice, TX 78332 |
| Governing Agency: | Texas Secretary of State |

## Company Contacts

AJIT BHAKTA
Member
1789 Johnson
Alice, TX 78332



**Google Maps image of 1789 Johnson, Alice, Texas**

**Business Address of Poojaben LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that this Response in Opposition has been served on the Filing Users

identified below through the Electronic Case Filing (ECF) system and/or by email on:

Ronald W. Chapman II. Esquire
Matthew B. Lawhon, Esquire
BHASKAR SAVANI
a/k/a "Dr. B"

Michael J. Sullivan, Esquire
Julia Lueddeke, Esquire
Scott M. Esterbrook, Esquire
ARUN SAVANI

William DeStefano, Esquire
NIRANJAN SAVANI
a/k/a "Nin"

*/s Lesley S. Bonney*
LESLEY S. BONNEY
Assistant United States Attorney

Dated:  May 30, 2023.